UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MUSKET CORPORATION,

                  Plaintiff,

      - against -

PDVSA PETROLEO, S.A., a/k/a PDVSA
PETROLEO Y GAS, S.A., ADVANCED
ENGINEERING DEVELOPMENT LTD. and
INTRAKAM S.A. de C.V.,

                  Defendants.

Civil Action No.
06 CV 15522 (VM)

**AMENDED COMPLAINT**



Plaintiff Musket Corporation ("Musket"), by and through its attorneys, Holland & Knight

LLP, as and for its Amended Complaint against defendants Advanced Engineering Development

Ltd. ("Advanced") and Intrakam S.A. de C.V. ("Intrakam"), alleges:

## INTRODUCTION

1.      As further alleged herein, this action arises out of a transaction pursuant to which

Musket purchased a cargo of gasoil (the "Cargo") pursuant to a contract (the "Contract") between

Musket and Advanced.  Although Musket purchased the Cargo from Advanced, non-party

PDVSA Petroleo, S.A., also known as PDVSA Petroleo y Gas, S.A. ("PDVSA"), upon

information and belief, owned the Cargo.[1]

2.      As a part of the transaction, Musket established a "stand-by" letter of credit for

the benefit of PDVSA.

---

[1] PDVSA, which was named as a defendant in the original Complaint in this action, is a state-owned corporation organized and existing under the laws of the Bolivarian Republic of Venezuela and maintains its principal place of business in Caracas, Venezuela.  By Stipulation and Order, all claims of plaintiff against PDVSA have been dismissed with prejudice.

3.      Musket made all payments due under the Contract, as amended.  Nevertheless, after the Cargo was delivered and all payments were made, PDVSA drew down $1,561,061.50 from the standby letter of credit that had been established.

4.      In order to prevent the disbursement of these funds to PDVSA by the issuing bank, JPMorgan Chase Bank N.A. ("Chase Bank"), Musket obtained an *ex parte* Order of Attachment from this Court on December 28, 2006.  Thereafter, the funds in dispute, in the amount of $1,561,061.50, were deposited in the Registry of the Court.

5.      By Order dated September 26, 2007, the Court denied Musket's Motion to Confirm the Attachment Order.  Thereafter, by Stipulation and Order, the Clerk of the Court has been directed to release to PDVSA the aforementioned funds deposited in the Registry of the Court.  Accordingly, PDVSA is entitled to, and either has already or soon shall receive, the funds in dispute, with interest accrued.

6.      Accordingly, Plaintiff hereby seeks to recover from the defendants the sum of $1,561,061.50, together with prejudgment interest and costs.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between the citizen of a state and citizens of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in this district and because a substantial part of the property that is at issue is located here.

## PARTIES

9.      Musket is a corporation organized and existing under the laws of the State of Oklahoma and maintains its principal place of business at 10601 N. Pennsylvania Avenue, Oklahoma City, Oklahoma.

10.      Upon information and belief, Advanced is a corporation organized and existing under the laws of the British Virgin Islands and maintains its principal place of business in Malaga, Spain.

11.      Upon information and belief, Intrakam is a corporation organized and existing under the laws of the United Mexican States and maintains its principal place of business in Saltillo, Coahuila, Mexico.

## FACTUAL BACKGROUND

12.      In early November 2004, Mr. Daniel Gallardo, an employee of General Oil Company, located in New York, New York, contacted Mr. Ravi Ramdas ("Ramdas"), Musket's Basis Trading Manager, to inquire if Musket was interested in purchasing a cargo of gasoil from Advanced.

13.      Thereafter, Diptsy Molina  ("Molina") of Advanced informed Ramdas that Advanced was acting in the transaction for Intrakam and PDVSA.  She identified Intrakam as one of several entities that handle sales on PDVSA's behalf to entities, such as Musket, that are not registered to do business with PDVSA.

14.      On or about November 14, 2006, Musket entered into the Contract with Advanced.  Pursuant to the Contract, Musket agreed to purchase 35,708 metric tons, more or less, of Number D2 Diesel Oil, which was to be shipped from Venezuela aboard the *Team*

*Aniara,* a vessel operated by Team Tankers A.S. ("Team Tankers").  A true and correct copy of the Contract is annexed hereto as Exhibit A and is made a part hereof.

15.     Upon information and belief, Intrakam and/or Advanced had previously entered into a charter party agreement with Team Tankers with respect to the shipment of the Cargo. Musket was not a party to this agreement and had no obligations thereunder.

16.     Pursuant to the terms of the Contract, Musket was not responsible to pay shipping costs or demurrage.

17.     The Contract price was (i) the average market price for the dates November 13, 2006 through November 15, 2006 (which amounted to $68.1552 per U.S. barrel (*i.e.,* $1.6227 per U.S. gallon or $502.486 per metric ton), times (ii) the actual quantity of the shipment as determined upon discharge at the destination port.

18.     Based upon the amount of oil that was ultimately delivered, the purchase price was $17,933,192.57.

19.     The Contract required Musket to pay both PDVSA, in primary part, and Advanced, in a lesser amount.  Payments were to be made against a standby letter of credit issued in PDVSA's favor within three (3) banking days after the latter of (i) confirmation of compliance with contractual specifications; (ii) discharge of the Cargo; and (iii) confirmation of the quantity of Cargo received in the shore tanks at the discharge port.

20.     Pursuant to the terms of the Contract, Musket procured an irrevocable standby letter of credit (No. CTCS-651908) dated November 14, 2006 (the "Letter of Credit"), issued by Chase Bank.  PDVSA was the beneficiary of the Letter of Credit, a true and correct copy of which is annexed hereto as Exhibit B and made a part hereof.

4

21.     On or about November 15, 2006, employees of Advanced, Musket, PDVSA and Intrakam held a telephone conference regarding, among other things, the Letter of Credit. PDVSA requested that the name of the applicant appearing on the Letter of Credit be changed from Musket Corporation to "Musket Corporation on behalf of the Company Intrakam SA." Musket agreed, and Chase Bank issued an amendment to the Letter of Credit dated November 17, 2006. A true and correct copy of the foregoing amendment to the Letter of Credit is annexed hereto as Exhibit C and made a part hereof.

### Substantial Demurrage Had Already Been Incurred

22.     Upon information and belief, in October 2006, Intrakam had agreed to purchase the Cargo from PDVSA and to prepay for the Cargo prior to loading. However, despite the fact that Intrakam had not paid for the Cargo, PDVSA nevertheless loaded the Cargo on the vessel *Team Aniara*, on or about October 27, 2006. This loading was done to suit the convenience of PDVSA because its shore tanks were full and its refineries would have been required to operate at reduced capacity, or to shut down, unless extra capacity in its shore tanks was made available.

23.     Accordingly, at this point the vessel and Cargo were "in limbo" at the load port in Venezuela, with the vessel acting in substance as a floating storage facility for PDVSA's benefit.

24.     Because a purchaser for the Cargo could not be found for some period of time, the vessel and Cargo lay idle in port for approximately 23 days.

25.     Upon information and belief, after Musket agreed to the Contact, the vessel finally weighed anchor and left Venezuelan waters on November 19, 2006.

26.     Pursuant to the contract of shipment with Team Tankers, and as is standard practice, a shipper charges demurrage, on a *per diem* basis, when a vessel is delayed in port.

27.    Upon information and belief, on or about November 22, 2006, Team Tankers invoiced Advanced for shipping charges in the amount of $2,191,000, including demurrage of $825,000.

28.    The foregoing facts regarding the breach by Intrakam of its contract with PDVSA, PDVSA's decision nevertheless to load the vessel for its convenience, the substantial delay in the vessel leaving port, and the resulting demurrage charges incurred, were unknown to Musket when it entered into the Contract and were concealed from Musket.

### The Amendment of the Contract

29.    After the vessel was *en route* to its destination, Advanced advised Musket that the shipping charges were greater than had been anticipated; that Advanced and PDVSA had agreed to reduce the amounts due to them from Musket under the Contract, in an amount equal to the total shipping charges; and that Musket should pay the shipping charges in full, and reduce its payments to PDVSA and Advanced to that extent, in agreed amounts.

30.    Accordingly in early December 2006, while the vessel was on the water, Advanced requested that Musket agree to amend the Contract to provide that the total amount due from Musket would be paid as follows: $2,191,000 to Team Tankers; and $14,430,000 to PDVSA, and $1,309,000 to Advanced, the latter two amounts being subject to adjustment depending on the volume of the Cargo as measured at discharge.

31.    Musket consented to this proposal and accordingly the Contract was amended on December 4, 2006 to reflect the foregoing terms (hereinafter the "Contract Amendment"). A true and correct copy of the Contract Amendment is annexed hereto as Exhibit D and made a part hereof.

6

**The Delivery and Acceptance of the Cargo, Payment in Full by**
**Musket, and PDVSA's Draw-Down Under the Letter of Credit**

32.     Team Tankers delivered and discharged the Cargo at Antwerp, Belgium on or about December 10, 2006. Based upon the delivery volume recorded on the shore tank receipts, the total purchase price was $17,933,192.57.

33.     Pursuant to the terms of the Contract, as amended, Musket made the following payments, all by wire transfer, fully discharging its obligations thereunder: $2,191,000 to Team Tankers on December 4, 2006; $1,309,000 to Advanced on December 5, 2006; and $14,433,192.57 to PDVSA on December 19, 2006.

34.     Although Musket had fully discharged its contractual obligations by making the foregoing payments, PDVSA initiated a draw-down against the Standby Letter of Credit in an attempt to recover a further sum of $1,561,061.50.

35.     Upon information and belief, the amount which PDVSA sought to recover was the difference between the amount that Musket had already paid PDVSA pursuant to the Contract as amended ($14,433,192.57), and the amount for which, upon information and belief, PDVSA had invoiced Intrakam ($15,992,694.88).

36.     Musket was not a party to any contract between Intrakam and PDVSA, and therefore, it is not liable for any amounts that Intrakam allegedly owes to PDVSA.

**AS AND FOR MUSKET'S FIRST CLAIM**
(ADVANCED -- FRAUDULENT INDUCEMENT
OF CONTRACT AMENDMENT)

37.     Plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 36 as if set forth more fully herein.

38.     Advanced represented at all times that it had full authority to enter into the Contract and the Contract Amendment and to act on PDVSA's behalf.

7

39.    Advanced represented to Musket that the Contract Amendment was fully authorized and approved by PDVSA and that Musket's payments thereunder would fully discharge its payment liability for the Cargo.

40.    Such representations by Advanced were false.

41.    Upon information and belief, Advanced's principals or employees made these representations in order to induce Musket to pay a liability that Advanced had assumed for Team Tanker's shipping and demurrage charges ($2,191,000), which exceeded the amount that Musket had agreed to pay Advanced pursuant to the original Contract (approximately $2,180,000).

42.    By inducing Musket to enter into the Contract Amendment, Advanced insured that such shipping and demurrage charges would be paid in full by Musket, rather than by Advanced, and that Advanced would still receive a substantial sum ($1,309,000) from Musket.

43.    Advanced knowingly deceived Musket.

44.    Musket reasonably relied upon Advanced's representations.

45.    Musket has sustained damages as a result thereof in the amount of $1,561,061.50, with interest, for which Advanced should be held liable.

### AS AND FOR MUSKET'S SECOND CLAIM
(INTRAKAM -- UNJUST ENRICHMENT)

46.    Plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 45 as if set forth more fully herein.

47.    Upon information and belief, Intrakam failed to pay $1,561,061.50 due and owing under its contract with PDVSA, which sum has instead been paid to PDVSA by Musket.

48.    Intrakam has been unjustly enriched at Musket's expense.

49.    Equity and good conscience require that Intrakam reimburse Musket in the amount of $1,561,061.50, together with prejudgment interest and costs.

8

**WHEREFORE**, plaintiff demands judgment (1) against Advanced in the amount of

$1,561,061.50, together with prejudgment interest and costs; and (2) against Intrakam in the

amount of $1,561,061.50, together with prejudgment interest and costs; all together with such

other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       February 19, 2008

                         HOLLAND & KNIGHT LLP

                         By: _____
                              John J. Reilly
                              David D. Howe
                         195 Broadway
                         New York, New York 10007
                         (212) 513-3200

                         Attorneys for Plaintiff
                         Musket Corporation

# 4270351_v4

9

Exhibit A

# SALES & PURCHASE AGREEMENT

## BETWEEN

**Advanced Engineering Development Ltd.**
Ur. Guadalmina Alta Ed Barclays Local 4
San Pedro, Marbella, Malaga Spain 29678
INTRAKAM/ PDVSA OPERATOR
(Hereinafter Referred to as the "<u>Seller</u>")

## AND

**Musket Corporation**
10601 N Pennsylvania Ave., Oklahoma City, OK 73120
(Hereinafter Referred to as the "<u>Buyer</u>")

## RECITALS

**WHEREAS,** Seller, with full corporate authority and responsibility, agrees to sell and deliver the herein specified quantity and quality of 35'708 metric ton ("<u>MT</u>") D2 Diesel Oil (the "<u>Commodity</u>") to Buyer and Buyer agrees to purchase said Commodity from Seller in the amount and in the quantity herein stipulated.

**NOW, THEREFORE,** the parties hereto agree to enter into this Sale & Purchase Agreement (the "<u>Agreement</u>") upon consideration of the mutual covenants hereof and promise to abide by the terms and conditions of this Agreement to sell and purchases the Commodity.

<u>**Commodity Specifications:**</u>  As per attached <u>Schedule A</u>.

<u>**Quantity:**</u>  35'708 MT.

<u>**Destination/Delivery:**</u>  Delivered into destination shore tanks on the M/T TEAM ANIARA.

<u>**Origin:**</u>  Venezuela.

<u>**Price:**</u>  On Delivered basis to the U.S. Gulf Coast and or European port option,as published by Platts on deemed dates 13, 14 & 15 November, 2006 for No. 2 oil waterborne mean quotes, less $0.015 cents per gallon. All other destinations to be adjusted according to the charter party.



**Documents:**  The documents that will be handed over by Seller to Buyer for confirmation that the Commodity has been discharged are as follows:

(i)     One (1) original and three (3) copies of the Commercial Invoice, based on the loaded quantity and quality by SGS report, showing name of vessel, date of completion, discharge quantity and state of delivery;

(ii)    Three (3) original and non-negotiable copies of Bill of Lading ("B/L"), with the B/L to be signed by the owner and master of vessel issued or endorsed to the order or to the Buyer showing destination;

(iii)   One (1) original and three (3) copies of the Certificate of Quantity issued at the discharge port;

(iv)    One (1) original and three (3) copies of the Certificate of Quality issued at the discharge port;

(v)     One (1) original and three (3) copies of the Certificate of Origin by the oil company;

(vi)    One (1) original and three (3) copies of the Master's Receipt of samples;

(vii)   One (1) original of the Ullage report issued at loading terminal; and

(viii)  One (1) original and three (3) copies of the Cleanliness Report at loading port.

**Payments:**  All payments shall be in US Dollars, against a Standby Letter of Credit to PDVSA Petroleo S.A., within three (3) banking days after the latter of (i) confirmation of compliance with contractual specifications; (ii) discharge of the Commodity; and (iii) confirmation of the quantity in receiving shore tank of Commodity at discharge port, as follows:

A.      Issued to:

PDVSA PETROLEO S.A.

JP MORGAN CHASE NEW YORK N.Y.

270 Park Av. New York 10172

Account No.: 0011992765

Router 022000021 Swift: CHASUS33

Amount:  On Delivered basis to the U.S. Gulf Coast and or European option, as published by Platts on deemed dates 13, 14 & 15 November, 2006 for No. 2 oil waterborne mean quotes, less $0.015 cents per gallon, LESS US$61.00 per MT.

B.      Letter of Credit payable at sight of documents 25 days from BL date. Confirmed by Credit Suisse, Issued to:

ADVANCED ENGINEERING DEVELOPMENT LTD.

CREDIT SUISSE FIRST BOSTON

17 RUE DE LAUSANNE

CH- 1211 GENEVA 70

FAX + 4122 3932334

SWIFT: CRESCHZZ12A

Account Number: 0251-255055-52 USD



{00105863.DOC;4}

2

Amount: US$61.00 per MT.

**Claims:** Any claim that either party may have for loss or damages hereunder, due to an occurrence or event, shall be submitted in writing to the other party within a period of two (2) months from the date of that occurrence or event.

In the event that the quality of any one of the delivered batches fails to comply with the contractual specifications, then Buyer shall have the option to accept the said batch at a mutually acceptable lower price, which is agreed upon in writing prior to the commencement of the discharge operations, or to reject the same.

If within thirty (30) calendar days from the date of discharge of a vessel, Buyer fails to inform Seller of the non-compliance of a Commodity with the contractual specifications, the Commodity will be deemed to have been accepted by Buyer, and Seller will accept no non-compliance claim thereafter.

All claims will be made in writing and both parties agree to acknowledge such claims by written acceptance thereof (upon request therefore).

**Laytime:** Buyer warrants that Seller's nominated vessel(s) will be allowed to discharge their cargo within thirty-six (36) free running hours, Sundays and legal holidays included ("SHINC"), plus six (6) hours after docking at the discharge dock, maintaining at the ship's manifolds an average discharge pressure of not more than ten (10) kilograms per square centimeter (kg/cm2).

NOR shall be given on departure from the loading port, on 96/72/48/24/12 hrs., and on such vessel's arrival at Buyer's designated discharge port, by the ship's master to Buyer and/or its agent, by radio, cable or by hand, at any time, SHINC.

Laytime shall commence upon the vessel being all-fast in berth.

**Berthing Order:** Vessels arriving and issuing a valid NOR within the date rage approved by Musket (the "approved laydays") will be berthed at the terminal dock in the order of their tendering of valid NOR and will have priority over early or late vessels. A vessel arriving after its approved laydays will be allocated available time slots on the dock schedule.

**Demurrage:** Demurrage at discharge port (if any) (i) if not caused by Buyer's nominated discharge terminal, will be paid by Seller to Buyer; and (ii) if caused by Buyer's nominated discharge terminal, will be paid by Buyer to Seller. Demurrages amount shall be computed at the charter party rate. For this purpose, Seller shall provide the Buyer with a copy of the original charter party. Demurrages will be based on daily rate or pro-rata thereof.

**Duties and Taxes:** Buyer shall be responsible for all duties and taxes levied on cargo by the authorities of the country of discharge. Title shall pass from Seller to Buyer when the complete discharge of cargo is made to Buyer.


{00105863.DOC;4}

3

**Applicable Law:** This Agreement and the legal relations between the parties shall be governed by the laws of the State of New York without giving effect to any conflict of law provision (whether of the State of New York or any other jurisdiction) that would cause the application of the law of any other jurisdiction. The parties agree to make good faith efforts to resolve any dispute arising under or in relation to this Agreement in an amicable manner. All legal proceedings arising under or in relation to this Agreement are to be conducted in English. In any action to enforce or defend this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs associated therewith.

**Force Majeure:** Neither party to this agreement shall be responsible for a breach of contract cause by events beyond its reasonable control, including without limitation, acts of God, insurrection, breakdown of refinery operations or supplies to the Seller (upon which Seller necessarily relies in its performance hereunder), civil war, military operations, and national or local emergencies; provided such party acts in good faith and with due diligence to cure such non-performance at the earliest possible date.

**Non Circumvention / Non Disclosure:** The undersigned parties do hereby accept and agree to fulfil obligations due to agents and facilitators; provided that all fees or commissions owed thereto in connection herewith shall be paid by Seller. In the event of direct, or even indirect circumvention through a third party, the circumvented party shall be entitled to legal monetary award equal to the maximum service fees it should have realized from the transaction. Seller agrees to indemnify, defend and hold Buyer harmless from and against any and all liabilities and claims for agent and/or facilitator fees in regard to this Agreement.

**Language and Signing:** The terms and conditions of this Agreement shall inure to the benefit of and be binding on all parties hereto and their respective successors and assigns. The parties confirm that each has read and understood the terms and conditions hereof as written. If any term and condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the rest of the Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. Both parties having understood all the terms and conditions of this Agreement hereby agree to honour all clauses with all privileges, rights and immunities pertaining herein, making this Agreement effective on the date of signing by all parties. If executed in multiple copies by the parties hereto, all such copies taken together shall constitute a binding instrument.

**Declaration:** The undersigned declare that the foregoing instrument fully sets forth the entire agreement between the parties and that the signatories below have been fully and duly authorised to enter into and bind its respective company to the terms of this Agreement.

{00105863.DOC;4}

4

IN WITNESS WHEREOF, the parties have executed this Agreement under the hand of their duly authorised officers as witnessed below, as of the date of last execution hereof.

**SELLER:**

**ADVANCED ENGINEERING DEVELOPMENT LTD.**

By: _____
    Irini Nicoletos, Director

**Date of Execution: November ____, 2006**


**BUYER:**

**MUSKET CORPORATION**


By: _____
Name: _____
Title: _____

**Date of Execution: November ___, 2006**

Exhibit B

JPMORGAN CHASE BANK    Fax:3129542458    Aug 31 2005 16:53    P.02

## JPMorganChase ⬡

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 14, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF. NO.: PDVSA-2

IRREVOCABLE STANDBY LETTER OF CREDIT NO. CTCS-651908

BENEFICIARY:
PDVSA PETROLEO (Y GAS,) S.A.
DIVISION CORPORATIVA DE MANUFACTURA Y MERCADEO
EDIF. PDVSA, TORRE OESTE
AV. LIBERTADOR, LA CAMPINA
CARACAS, VENEZUELA

GENTLEMEN:

BY THE ORDER OF:

APPLICANT:
MUSKET CORPORATION
10601 N. PENNSYLVANIA (73120)
P.O. BOX 26210
OKLAHOMA CITY, OK 73126
UNITED STATES

WE HEREBY ISSUE IN FAVOR OF PDVSA PETROLEO (Y GAS), S.A. OUR IRREVOCABLE
STANDBY LETTER OF CREDIT NO: CTCS-651908 FOR THE ACCOUNT OF MUSKET
CORPORATION FOR AN AMOUNT OR AMOUNTS NOT TO EXCEED IN THE AGGREGATE US
$16,400,000.00 +/- 10% (SIXTEEN MILLION FOUR HUNDRED THOUSAND AND 00/100
U.S. DOLLARS PLUS/MINUS TEN PERCENT) AVAILABLE BY YOUR DRAFTS AT SIGHT ON
JPMORGAN CHASE BANK, N.A., CHICAGO, IL EFFECTIVE NOVEMBER 14, 2006 AND
EXPIRING AT OUR OFFICE ON DECEMBER 29, 2006.

FUNDS UNDER THIS CREDIT ARE AVAILABLE AGAINST YOUR DRAFT(S) AS HEREIN
ABOVE SET FORTH MARKED "DRAWN UNDER JPMORGAN CHASE BANK, N.A. LETTER OF
CREDIT NO. CTCS-651908" AND ACCOMPANIED BY THE FOLLOWING:

BENEFICIARY'S SIGNED AND DATED STATEMENT: "WE, PDVSA PETROLEO (Y GAS) S.A.,
HEREBY CERTIFY THAT MUSKET CORPORATION HAS FAILED TO PAY US ON DUE DATE
THE AMOUNT OF U.S. $16,400,000.00 PLUS +/- 10% (SIXTEEN MILLION FOUR
HUNDRED THOUSAND AND 00/100 U.S. DOLLARS PLUS AND MINUS TEN PERCENT)FOR
THE SHIPMENT OF MT35,708 OF D2 DIESEL OIL FROM PUNTA CARDON,VENEZUELA TO
HOUSTON, TEXAS, USA SHIPPED ON VESSEL M/T TEAM ANIARA." THEREFORE, WE

JPMORGAN CHASE BANK    Fax:3129542458                Aug 31 2003  16:53    P.03

**JPMorganChase**

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 14, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF. NO.: PDVSA-2

DEMAND PAYMENT OF SAID AMOUNT IN SAME DAY FUNDS VIA WIRE TRANSFER TO OUR
ACCOUNT PDVSA PETROLEO S.A., JPMORGAN CHASE BANK, N.A., NEW YORK 270 PARK
AVE., NEW YORK 10172, ACCOUNT NUMBER 0011992765 ROUTER 022000021 SWIFT:
CHASUS33.

WE ENGAGE WITH THE BENEFICIARY THAT DRAFTS DRAWN UNDER AND IN CONFORMITY
WITH THE TERMS AND CONDITIONS OF THIS CREDIT WILL BE DULY HONORED ON
PRESENTATION IF PRESENTED ON OR BEFORE THE EXPIRATION AT OUR COUNTERS AT
300 SOUTH RIVERSIDE PLAZA, MAIL CODE IL1-0236, ATTN: STANDBY LETTER OF
CREDIT UNIT, CHICAGO, IL 60606-0236.  THE ORIGINAL LETTER OF CREDIT MUST
ACCOMPANY THE DOCUMENTS REQUIRED UNDER THIS CREDIT FOR ENDORSEMENT.

ALL BANKING CHARGES RELATED TO THIS LETTER OF CREDIT ARE FOR THE ACCOUNT
OF THE APPLICANT. PAYMENTS WILL BE MADE TO THE BENEFICIARY WITHOUT
DEDUCTION OF ANY BANK FEE.

IF THIS CREDIT EXPIRES DURING AN INTERRUPTION OF BUSINESS AS A RESULT OF
ONE OR MORE OF THE OCCURRENCES SPECIFIED IN ARTICLE 17 OF PUBLICATION 500,
IT SHALL BE DEEMED AUTOMATICALLY EXTENDED TO THE DAY OCCURING 30 CALENDAR
DAYS AFTER THE PLACE FOR PRESENTATION RE-OPENS FOR BUSINESS.

IN ACCORDANCE WITH UCP500 ARTICLES 4 AND 15, OUR OBLIGATION TO HONOR
DRAFTS DRAWN AND DOCUMENTS PRESENTED UNDER AND IN CONFORMITY WITH THE
TERMS AND CONDITIONS OF THIS CREDIT IS INDEPENDENT OF THE UNDERLYING
TRANSACTION AND WE ARE NOT RESPONSIBLE FOR ACCURACY OF ANY STATEMENT MADE
IN ANY DOCUMENT REQUIRED, IRRESPECTIVE OF WHETHER THE APPLICANT HAS BECOME
SUBJECT TO ANY BANKRUPTCY, REORGANIZATION OR INSOLVENCY PROCEEDING.

THIS LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR UNDERTAKING, AND
SUCH UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED OR AMPLIFIED BY
REFERENCE TO ANY DOCUMENT, INSTRUMENT OR AGREEMENT REFERRED TO HEREIN OR
IN WHICH THIS LETTER OF CREDIT IS REFERRED TO OR TO WHICH THIS LETTER OF
CREDIT RELATES, AND ANY SUCH REFERENCE SHALL NOT BE DEEMED TO INCORPORATE
HEREIN BY REFERENCE ANY DOCUMENT, INSTRUMENT OR AGREEMENT.

THIS LETTER OF CREDIT IS GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE
LAWS OF THE STATE OF NEW YORK, AND, EXCEPT AS OTHERWISE EXPRESSLY STATED
HEREIN, TO THE UNIFORM RULES FOR DOCUMENTARY CREDITS, ICC PUBLICATION NO.

JPMORGAN CHASE BANK    Fax:3129542458    Aug 31 2003  16:53    P.04

## JPMorganChase 🔾

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 14, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF. NO.: PDVSA-2

500, 1993 REVISION, AND IN THE EVENT OF ANY CONFLICT, THE LAWS OF THE
STATE OF NEW YORK WILL CONTROL, WITHOUT REGARD TO PRINCIPLES OF CONFLICT
OF LAWS.

PLEASE ADDRESS ALL CORRESPONDENCE REGARDING THIS LETTER OF CREDIT TO THE
ATTENTION OF THE STANDBY LETTER OF CREDIT UNIT, 300 S. RIVERSIDE PLAZA,
MAIL CODE IL1-0236, CHICAGO, IL 60606-0236, INCLUDING THE LETTER OF CREDIT
NUMBER MENTIONED ABOVE.  FOR TELEPHONE ASSISTANCE, PLEASE CONTACT THE
STANDBY CLIENT SERVICE UNIT AT 1-800-634-1969, SELECT OPTION 1, AND HAVE
THIS LETTER OF CREDIT NUMBER AVAILABLE.

*E. Albesin*
AUTHORIZED SIGNATURE

143425 Emelia Sano                                    Page 3 of 3

Exhibit C

**JPMorganChase**

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 17, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF. NO.: PDVSA-2
AMENDMENT NO.: 1

TO:
PDVSA PETROLEO S.A.
DIVISION CORPORATIVA DE MANUFACTURA
Y MERCADEO EDIF. PDVSA, TORRE OESTE
CARACAS,
VENEZUELA

APPLICANT:
MUSKET CORPORATION ON BEHALF OF THE
COMPANY INTRAKAM SA DE CV
10601 N. PENNSYLVANIA
P.O. BOX 26210
OKLAHOMA CITY, OK 73126

IN ACCORDANCE WITH INSTRUCTIONS RECEIVED, THE ABOVE REFERENCED STANDBY
LETTER OF CREDIT HAS BEEN AMENDED AS FOLLOWS:

RECEIVER'S REFERENCE:              NONREF

APPLICANT'S NAME AND ADDRESS ARE CHANGED TO
MUSKET CORPORATION ON BEHALF OF THE
COMPANY INTRAKAM SA DE CV
10601 N. PENNSYLVANIA
P.O. BOX 26210
OKLAHOMA CITY, OK 73126

BENEFICIARY'S NAME AND ADDRESS ARE CHANGED TO
PDVSA PETROLEO S.A.
DIVISION CORPORATIVA DE MANUFACTURA
Y MERCADEO EDIF. PDVSA, TORRE OESTE
CARACAS,
VENEZUELA

THE FOLLOWING 2 CONDITIONS ARE ADDED:

WE UNDERSTAND THIS LETTER OF CREDIT IS ISSUED RELATIVE TO CONTRACT
REFERENCE 015INTRAK COVERING THE PURCHASE OF MT35,708 OF D2 DIESEL OIL
BETWEEN PDVSA PETROLEO S.A. AND THE COMPANY INTRAKAM SA DE CV. WE FURTHER
UNDERSTAND THAT INTRAKAM SA DE CV'S ROLE IS AS AN OPERATIVE ON BEHALF OF
PDVSA PETROLEO S.A., ONLY.

THE AMOUNT AVAILABLE FOR DRAWING UNDER THIS LETTER OF CREDIT WILL BE
REDUCED BY THE AMOUNT OF ANY PAYMENTS MADE OUTSIDE THIS LETTER OF CREDIT TO

**JPMorganChase** ⬤

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 17, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF.: NO: PDVSA-2
AMENDMENT NO.: 1

THE BENEFICIARY IF SUCH PAYMENTS ARE MADE THROUGH JPMORGAN CHASE BANK,
N.A., CHICAGO AND REFERENCE THIS LETTER OF CREDIT.

BENEFICIARY'S SIGNED AND DATED STATEMENT IS CHANGED TO READ AS FOLLOWS:
"WE, PDVSA PETROLEOS, S.A,HEREBY CERTIFY THAT MUSKET CORPORATION ON BEHALF
OF THE COMPANY INTRAKAM SA DE CV HAS FAILED TO PAY US ON DUE DATE THE
AMOUNT OF U.S. $16,400,000.00 PLUS +/- 10% (SIXTEEN MILLION FOUR HUNDRED
THOUSAND AND 00/100 U.S. DOLLARS PLUS AND MINUS TEN PERCENT) FOR THE
SHIPMENT OF MT35,708 OF D2 DIESEL OIL FROM PUNTA CARDON,VENEZUELA TO
HOUSTON, TEXAS, USA SHIPPED ON VESSEL M/T TEAM ANIARA." THEREFORE, WE
DEMAND PAYMENT OF SAID AMOUNT IN SAME DAY FUNDS VIA WIRE TRANSFER TO OUR
ACCOUNT PDVSA PETROLEO S.A., JPMORGAN CHASE BANK, N.A., NEW YORK 270 PARK
AVE., NEW YORK 10172, ACCOUNT NUMBER 0011992765 ROUTER 022000021 SWIFT:
CHASUS33.
ALL AMENDMENT UNDER THIS LETTER OF CREDIT ARE SUBJECT TO THE BENEFICIARY'S
AGREEMENT, AS PER (SELECT ONE) [ARTICLE 9D, UCP 500] OR [RULE 1.06B,
ISP98].  THIS AMENDMENT SHALL NOT BE CONSIDERED OPERATIVE UNLESS THE
BENEFICIARY COMMUNICATES THEIR AGREEMENT TO THE AMENDED TERMS. PLEASE
INDICATE YOUR ACCEPTANCE/REJECTION BY SIGNING AND RETURNING A COPY OF THIS
AMENDMENT TO THE ATTENTION OF STANDBY LETTER OF CREDIT UNIT, 300 S.
RIVERSIDE PLAZA, MAIL CODE IL1-0236, CHICAGO, ILLINOIS60606-0236.

PDVSA PETROLEO S.A.

ACCEPTED BY: _____
ITS: _____
DATE: _____   _____

REJECTED BY: _____
ITS: _____
DATE: _____   _____

ALL OTHER TERMS AND CONDITIONS OF THE CREDIT REMAIN UNCHANGED.

170631 Evelyn Abbasi

Pg 2 of 3

## JPMorganChase ⬡

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

NOV 17, 2006
OUR L/C NO.: CTCS-651908
APPLICANT REF. NO.: PDVSA-2
AMENDMENT NO.: 1

NOTE:  KINDLY SIGNIFY YOUR CONSENT TO THIS AMENDMENT BY SIGNING AND
RETURNING THE ENCLOSED COPY DIRECTLY TO US OR THE ADVISING BANK (IF ONE IS
PRESENT) FOR TRANSMISSION TO US.  YOUR IMMEDIATE ATTENTION TO THIS MATTER
WILL BE APPRECIATED IN ORDER THAT WE MAY COMPLETE OUR RECORDS.

AUTHORIZED SIGNATURE

Exhibit D

**CONTRACT AMENDMENT TO CONTRACT BETWEEN:**

**Advanced Engineering Development Ltd.**
Ur. Guadalmina Alta Ed Barclays Local 4
San Pedro, Marbella, Malaga Spain 29678
INTRAKAM/ PDVSA OPERATOR
(Hereinafter Referred to as the "Seller")

**AND**

**Musket Corporation**
10601 N Pennsylvania Ave., Oklahoma City, OK 73120
(Hereinafter Referred to as the "Buyer")

Amendment to the following clauses:

**Destination/Delivery:**  Delivered into destination shore tanks on the M/T TEAM ANIARA ("Vessel"), during 4 – 8 December 2006.

**Price:** "On Delivered basis to Antwerp, Belgium at $502.36/MT or approximately $17,928,695.90, the final invoice amount to be determined on shore tank receipt figures.

**Payments:**  Payments shall be in US Dollars, against a Standby Letter of Credit to PDVSA Petroleo S.A., within three (3) banking days after the latter of (i) confirmation of compliance with contractual specifications; (ii) discharge of the Commodity; and (iii) confirmation of the quantity in receiving shore tank of Commodity at discharge port, as follows:

A.    Issued to:

PDVSA PETROLEO S.A.

JP MORGAN CHASE NEW YORK N.Y.

270 Park Av. New York 10172

Account No.: 0011992765

Router 022000021 Swift: CHASUS33

Amount:  Approximately $14,430,000.00



B.    Issued to:
       ADVANCED ENGINEERING DEVELOPMENT LTD.
       CREDIT SUISSE FIRST BOSTON
       17 RUE DE LAUSANNE
       CH- 1211 GENEVA 70
       FAX + 4122 3932334
       SWIFT: CRESCHZZ12A
       Account Number: 0251-255055-52 USD

       Amount:  $1,309,000.00

C.    Issued to:
       TEAM TANKERS AS
       NORDEA BANK FINLAND, PLC, NEW YORK
       ABA: 026010786 SWIFT: NDEAUS3N

       Amount:  $2,191,000.00


**SELLER:**

**ADVANCED ENGINEERING DEVELOPMENT LTD.**

By: _____
       Irini Nicoletos, Director                4-12-2006

**Date of Execution:  November ___, 2006**


**BUYER:**

**MUSKET CORPORATION**


By:_____
Name:_____
Title:_____

**Date of Execution:  November ___, 2006**